TO          : Mr. James D. Wilder
              Maintenance Director

THROUGH     : Billy Sexton, Danny Faulkner

FROM        : Stephanie Smith

SUBJECT     : Current Working Environment Concerns

DATE        : April 24, 2003

Sir,

It is my intention to inform you of a situation in the work place, which is causing an uncomfortable working environment. On more than one occasion, I have entered the Bull Room where loud and vulgar language has taken place and is obviously offensive to the female gender. Due to this uncomfortable environment in the bull room, I have chosen to spend my lunch break in my assigned city vehicle.

One specific occasion, which has occurred recently, Mr. Sexton advised Mark Singleton not to return to the truck after the lunch break. It appeared that Mr. Sexton was trying to intentionally put me in a situation that would require disciplinary action, such as not reporting on time from my lunch break. To be specific, Mark Singleton who is my subordinate, entered the building where the Crime Scene Bureau is located in order to locate my spouse, Danny Smith. Mark Singleton's intentions were to inform my spouse so that he could contact me by using his cellular phone in order to let me know of the situation occurring. While doing so, Mr. Sexton apparently observed Mark Singleton entering the Crime Scene Bureau building and then followed Mr. Singleton. As Mr. Sexton entered the building, Mark Singleton was speaking with Lieutenant Kenney. Mr. Sexton then hastily stated to Mark Singleton, "What are you doing, telling Danny what I said. You don't have any business over here, get back over here."

To further expand on the uncomfortable work environment, we discussed a subordinate of mine, Roderick Chambers. This situation involves Chambers being placed back on my crew after an uncomfortable working situation that occurred. You had advised me that Chambers could not be transferred back to my crew without your approval. Mr. Sexton then informed me that Chambers would sue if he were not placed back on my crew. When the situation arose and Chambers was placed back on my crew, Mr. Sexton stated, "you know how them damn niggers are." The statement made by Mr. Sexton made me very uncomfortable and I found it to be offensive. Mr. Sexton has made it known that he can get rid of me and that he will never have another female working for him.


DEFENDANT'S EXHIBIT 11

On the latest incident, which occurred on April 23, 2003, Mr. Sexton held my crew back again from reporting back to the vehicle in an apparent attempt to make me late from my lunch break. When my crew did not report back from lunch on time, which is the standard day-to-day procedure, Mr. Sexton then asked me to report to his office. Mr. Sexton then advised me that he was going to take disciplinary action against me for sleeping on the job. I then stated to Mr. Sexton that he had intentionally held my crew from reporting back to the truck on time from lunch. He stated that it was not the job of the crew to report to the truck after lunch in order to wake me for work.

*Stephanie Smith*
Stephanie Smith

To: James D. Wilder (Maintenance Director)

Through: Billy Sexton, Danny Faulkner

From: Stephanie Smith

Date: April 29, 2003

Sir,

On April 23, 2003 I received a letter of reprimand for showing poor leadership from my supervisor, Billy Sexton. The letter of reprimand stated that I should be setting a good example for the service maintenance workers, which are assigned, to me.

On several occasions, I have walked through the office during work hours and have observed either Mr. Sexton or Mr. Faulkner asleep at their desk with their feet propped. With that in mind, Mr. Sexton sees fit to set forth disciplinary action against me for the same violation, which I have personally observed him doing.

Another occasion, I have observed Mr. Sexton's assigned city vehicle parked behind Class Act Styling Salon during business hours. During one of the occasions at the Salon, I placed a note on Mr. Sexton's windshield of his city vehicle. When I asked him about the note which I placed on his windshield, his reply was that he was in the tanning bed. With that in mind, I received disciplinary action by Mr. Sexton for taking my crew to use the restroom during business hours. While the crew was using the restroom, I walked over to a hardware store, purchased an item and was back at the vehicle before the crew finished using the restroom.

On April 3, 2003 at approximately 10:15 a.m., which is duty hours, Mr. Sexton was observed leaving Sam's Club Warehouse pushing a shopping cart, which was full of items. He unloaded the shopping cart of items into his assigned city vehicle. On a separate occasion, Mr. Faulkner has been seen driving his assigned city vehicle to and from Montgomery toward Elmore County during business hours.

It is my opinion, that Mr. Sexton is harassing me. Mr. Sexton has been observed doing the identical things of which he has taken disciplinary action against me.

*Stephanie Smith*
Stephanie Smith