**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **STEPHANIE SMITH,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CASE NO.:  2:06 CV59-C** |
| | * | |
| **CITY OF MONTGOMERY,** | * | |
| | * | |
| **Defendant.** | * | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION FOR  SUMMARY JUDGMENT**

**I.**

**Summary Judgment Standard**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of genuine issue of material fact.'" (Id.) at 323.  The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing, or pointing out to, the district court that the non-moving party has failed to present evidence in support of some element of the case on which it bears the ultimate burden of proof.  Id.

1

at 322-324.

Once the non-moving party has met its burden, Rule 56(e) "requires the non-moving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. To avoid summary judgment, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP. Similarly, the moving party is entitled to summary judgment if the non-moving party has failed to prove the elements of her case or there is the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. Fitzpatrick v. City of Atlanta, 2 F. 3d 1112, 1115-16 (11th Cir. 1993).

## II.

## Procedural Background

This lawsuit was filed on January 20, 2006, by Plaintiff Stephanie Smith ("Smith"), who was employed as a Labor Foreman I in the Maintenance Department for the City of Montgomery. Plaintiff filed an EEOC complaint against City of Montgomery ("the City") on November 25, 2003 with the following sworn statement:

"I was employed as a Labor Foreman I with the City of Montgomery. **The last approximately 4 years, my immediate supervisor was Billy Sexton. Mr. Sexton on 3 separate occasions, wrote me up and had me suspended. And on April 23, 2003, he wrote me up and recommended that I be dismissed.** I was the only female Labor Foreman under Mr. Sexton's supervision and he had not written up nor recommended male employees under his supervision, for the same conduct for which

2

I was written up and suspended.  Male employees have also been found to have committed the same conduct I did, for which I was dismissed and recommended for termination by Mr. Sexton; they have not been suspended or terminated.

On April 23, 2003, I remained in the truck that I drive as a Labor Foreman, during the Maintenance Dept. lunch break.  I instructed my employees who had gone into the "bull room" at the Maint. Dept. for lunch, to return to the truck at the end of the lunch break.  Mr. Billy Sexton had told my employees not to return to the truck and then he wrote me up for taking an excessive lunch break and sleeping on the job.  Mr. Sexton had made the comment which was witnessed by a number of employees and admitted to by him during my Personnel Board hearing "If I ever get rid of Stephanie, I will never have another female working for me."  The fact that he made that statement was made known up the chain to each of my supervisors and even to the Mayor's representative who conducted a hearing on my termination.  Mr. Sexton admitted to the substance of the comment under oath to the Montgomery City-County Personnel Board and there was other uncontradicted testimony that he had made the statement that he would never have another female foreman.  Even with this knowledge, the Mayor of the City of Montgomery terminated my employment.  And the Personnel Board in light of this testimony, upheld that termination.  During the process of my Personnel Bd. Hearing, I requested through a subpoena, the personnel files of any person charged with sleeping on the job or taking an excessive lunch break.  No one with the City of Montgomery had ever been terminated for that and all of the others who had been so charged, were male.

I believe that I was continuously written up by Mr. Sexton and ultimately he recommended my termination, which was upheld by the Mayor of the City of Montgomery and affirmed by the Montgomery City-County Personnel Board, because of my gender, female.  As male employees who had committed the same conduct were treated differently.  Each thing that Mr. Billy Sexton wrote me up for in the 4 years that I was under his supervision, were pre-textual for sexual discrimination, as male employees who committed the same conduct were not treated the same way that I was.

(Emphasis added).  *(DX 1, EEOC Charge of Discrimination Number 130-2004-00779).*

On January 29, 2004, the City of Montgomery denied Smith's claim of gender discrimination and maintained that Smith had indeed committed the violations in which she was charged. Additionally, the City claimed that Smith's claims were time barred.  *(DX 2, January 29, 2004 Statement of Respondent to Charge Number 130-2004-00779).*

3

On May 19, 2004, the City submitted another letter to the EEOC denying any type of discrimination and further documentation supporting that the claim was time barred because the alleged discriminatory act occurred on April 23, 2003 and the EEOC charge was filed November 25, 2003. *(DX 3, May 19, 2004 Letter to EEOC).*

On July 26, 2004, the EEOC issued a Determination letter with recommended conciliation of the charges for EEOC Charge Numbers 130-2004-00779 against the City of Montgomery and 130-2004-00800 against the City-County of Montgomery Personnel Board. The EEOC stated that the Charging Party was recommended for discharge by the Respondent Employer (the City) and finally terminated by Respondent Personnel Board (City-County of Montgomery Personnel Board) based on her sex in violation of Title VII. *(DX 4, July 21, 2004, EEOC Determination Letter).*

On August 9, 2004, the City sent a letter to the EEOC in response to the Determination letter from the EEOC denying discrimination of any kind and explaining that the City and the City-County of Montgomery Personnel Board were two separate entities with independent decision making authorities. *(DX 5, August 9, 2004 Letter from City of Montgomery).* Following the letter however, the EEOC upheld its findings. *(DX 6, EEOC Letter dated August 23, 2004).*

On September 22, 2004, the City sent a letter to the EEOC advising that the City could not agree to the conciliation proposal. *(DX 7, September 22, 2004 Letter from City of Montgomery).*

On October 26, 2005, the Notice of Right to Sue Letter was issued by the U.S. Department of Justice. *(DX 8, Notice of Right to Sue Letter dated October 26, 2005).*

Smith filed her Complaint against Defendant, City of Montgomery, on January 26, 2006, alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended. Smith has alleged that she has been discriminated against because of her gender, she was treated differently

than male employees, and that she was terminated from her position with the City of Montgomery because of her gender.  On February 16, 2006, the City filed an Answer with Affirmative Defenses.

### III.

### NARRATIVE STATEMENT OF FACTS

Stephanie Smith was a Labor Foreman I in the Maintenance Department for the City of Montgomery.  Smith was employed by the Maintenance Department in 1994. *(DX 13, Personnel File of Stephanie Smith and DX 12 Affidavit of Karen Cason).*  In or around February of 1999, her immediate supervisor became Billy Sexton ("Sexton"), Street Construction Supervisor.  *(DX 10, Transcript Personnel Board Hearing:  Sexton testimony, pages 6, 7& 10).*

On April 23, 2003, during lunch, Sexton told a laborer that worked on Stephanie's truck named Roderick Chambers ("Chambers") to tell Stephanie to go to Sherman Pipe Company to pick up an order.  *(DX 10, Transcript Personnel Board Hearing: Chambers testimony, page 92).*  Chambers could not remember what Sexton said so he went back at 12:30and asked him exactly what they were supposed to go and get.  *(DX 10, Transcript Personnel Board Hearing: Chambers testimony, page 92).*  Sexton wanted to know why they had not left the lot.  Sexton asked about Smith's whereabouts and Chambers said that she was out in the truck.  *(DX 10, Transcript Personnel Board Hearing: Sexton testimony, page 40 & 41 and Chambers testimony, page 92).*

Sexton told Chambers to wait in his office until Smith came in.  *(DX 10, Transcript Personnel Board Hearing: Chambers testimony, page 92).*  Smith reported to Sexton's office around 12:40 or sometime before 1:00.  *(DX 10, Transcript Personnel Board Hearing: Chambers testimony, page 92).*

On that same day, Smith was reprimanded by Sexton in the presence of Gail Gipson,

Maintenance Superintendent, for her lack of leadership as a supervisor due to sleeping on the job. *(DX 10, Transcript Personnel Board Hearing: Sexton testimony, pages 35 & 36).*

Smith signed the written Letter of Reprimand on April 28, 2003, which advised that with this infraction and her past record of three suspensions, she would be recommended for dismissal. *(DX 9, Excerpt from Personnel File of Stephanie Smith, Letter of Reprimand dated April 23, 2003 and signed by Smith on April 28, 2003).* The Maintenance Department used a graduated disciplinary system and, normally after two suspensions, an employee was recommended for termination on the third disciplinary action. *(DX 10, Transcript Personnel Board Hearing: Sexton testimony, pages 12 &13; Wilder testimony, page 46).* Smith was allowed to receive a third suspension for thirty days rather than termination in November 2002. *(DX 10, Transcript Personnel Board Hearing: Sexton testimony, pages 12 & 13; Wilder testimony, page 46).* Although Smith had previously been disciplined for sleeping on the job, there were other times that she was caught sleeping and not written up. *(DX 10, Transcript Personnel Board Hearing: Sexton testimony, pages 15 & 16).* Smith's personnel file indicates the following past disciplinary history:

1. Counseled by supervisor, Donald Thomas, on 2/1/96 for leaving her assigned work area without permission and for taking an excessively long lunch break.

2. Counseled on 1/26/98, by Assistant Maintenance Superintendent, Douglas Jones, for not being at her work site.

3. Counseled on 3/23/99, by Billy Sexton, for abusing her leave time.

4. Counseled on 6/21/99, by Billy Sexton, for showing poor leadership for sleeping on the job.

   ***6/28/99 Disciplinary Hearing before Maintenance Director - Past history considered: received 3 day suspension.***

6

5. Counseled on 1/3/01, by Billy Sexton, for an inexcusable absence which occurred on 12/20/00 of having less than 40 hours sick leave and not providing a doctor's excuse.

6. Counseled 4/23/01, by Billy Sexton, for sleeping on the job and showing poor leadership.

*5/2/01 Disciplinary Hearing before Maintenance Director - Past history considered: received 14 day suspension.*

7. Counseled on 10/31/02, by Billy Sexton, for reporting to work late on 10/30/02; sent home without pay, recommended for dismissal

*11/25/02 Disciplinary Hearing before Executive Assistant to the Mayor - Past history considered: suspended for 30 days.*

*(DX 9, Excerpts from Personnel File of Stephanie Smith regarding past disciplinary actions 1/26/98 – 11/25/02).*

On May 8, 2003, a departmental hearing was held for the purpose of considering disciplinary action against Ms. Smith for the April 23, 2003 infraction and her previous record. *(DX 9, Excerpt from Personnel File of Stephanie Smith, Disciplinary Hearing, May 8, 2003).* James Wilder, Maintenance Director, upheld the recommendation of Billy Sexton to terminate Ms. Smith. *(DX 9, Excerpt from Personnel File of Stephanie Smith, Disciplinary Hearing, May 8, 2003).*

On May 9, 2003, Smith requested a hearing with the Mayor's office regarding her termination. *(DX 9, Excerpt from Personnel File of Stephanie Smith, Disciplinary Hearing, May 8, 2003).* On May 21, 2003, a hearing was held before Larry Armstead, Executive Assistant to the Mayor. *(DX 9, Excerpt from Personnel File of Stephanie Smith, Appointing Authority's Record of Disciplinary Hearing, May 21, 2003).* On May 23, 2003, Mayor Bobby Bright upheld the termination recommendation for Smith. *((DX 9, Excerpt from Personnel File of Stephanie Smith*

*Memorandum, Letter dated May 23, 2003).*

On May 26, 2003, Smith requested an appeal of her dismissal to the City-County of Montgomery Personnel Board. *(DX 12, Affidavit of Karen Cason).* Smith's Personnel Board Hearing was held on November 10, 2003. *(DX 12, Affidavit of Karen Cason).* On November 12, 2003, counsel for Smith was advised that the City/County of Montgomery Personnel Board had upheld the City of Montgomery's decision to terminate her employment. *(DX 12, Affidavit of Karen Cason).*

After the April 23, 2003 Letter of Reprimand, Smith submitted memos to Jim Wilder with complaints regarding the workplace environment. Smith refers to the incident regarding her reprimand of April 23, 2003 as the latest incident. *(DX 11, Memos dated April 24 and April 29, 2003 from Stephanie Smith to Jim Wilder).* At her hearing before the City-County of Montgomery Personnel Board, Smith admitted that she had not gone to Jim Wilder prior to the final incident on April 23, 2003. *(DX 10, Transcript Personnel Board Hearing: Smith testimony, pages 149&150).*

## IV.

## ARGUMENT

### A.     FAILURE TO TIMELY EXHAUST ADMINISTRATIVE REMEDIES

The Plaintiff cannot use time barred evidence to prove a case of gender discrimination. The Plaintiff throughout the Complaint refers to conduct of other employees that she considered discriminatory or creating a hostile work environment. The conduct she refers to happened prior to her disciplinary action on April 23, 2003. The allegations are undated and were never submitted to the EEOC prior to the November 25, 2003 charge of discrimination which is the subject of this lawsuit.

In fact, the memo from the Plaintiff to department director Jim Wilder dated April 24, 2003 regarding allegations against Billy Sexton and complaints of an uncomfortable working environment, "On the latest incident which occurred on April 23, 2003…" The second memo to Wilder dated April 29, 2003, likewise, has no allegations of discriminatory acts that occurred after April 23, 2003. *(DX 11, Memos dated April 24 and April 29, 2003 from Stephanie Smith to Jim Wilder).* Therefore any charge of discrimination by Plaintiff should have been filed no later than October 23, 2003 however Plaintiff's EEOC charge was not filed with the EEOC until November 25, 2003. *(DX 1, EEOC Charge of Discrimination Number 130-2004-00779).* Therefore Plaintiff's lawsuit is barred by the applicable statute of limitations and for failure to exhaust administrative remedies.

In order for the Court to obtain judicial consideration of a [Title VII] claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred." Pijnenburg v. West Ga. Health Sys., Inc., 255 F.3d 1304, 1305 (11th Cir.2001); 42 U.S.C. § 2000e-(5)(e)(1) ("A charge under this section shall be filed within one hundred eighty days after the alleged unlawful employment practice occurred....").

Plaintiff was reprimanded and recommended for dismissal on April 23, 2003. Although she was entitled to due process hearings and an appeal process to the City-County of Montgomery Personnel Board, there are no allegations of subsequent acts of discrimination. There was nothing to prohibit Plaintiff from filing a charge with the EEOC at the same time that she submitted her memos to Jim Wilder. *(DX 11, Memos dated April 24 and April 29, 2003 from Stephanie Smith to Jim Wilder).* In fact, Plaintiff admitted that she did not say anything regarding her feeling that she was being treated differently because she was a woman until her hearing on May 8, 2003. *(DX 10, Transcript Personnel Board Hearing: Smith testimony, page 150).* To allow Plaintiff to claim that

her limitations period did not begin until after the due process hearings and appeal process would infer that if the recommendation for termination were not upheld, then there was no act of discrimination by Billy Sexton on April 23, 2003.

In Brewer v. Alabama, 111 F.Supp.2d 1197, 1204 (M.D.Ala.2000), the Court addressed the limitations period for filing a charge of discrimination,

> "The limitations period begins to run when an employee receives notice of the alleged discriminatory act, "**not the point at which the consequences of the act become painful**." Chardon v. Fernandez, 454 U.S. 6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (holding that the plaintiff's employment discrimination claim accrued when "the operative decision was made-and notice given-in advance of a designated date on which employment terminated"); *see also* Ricks, 449 U.S. at 258, 101 S.Ct. 498 (**holding that the limitations period commenced on the date the adverse employment decision was made and communicated to the plaintiff, even though one of the effects of the decision did not occur until later**); Grayson v. K Mart Corp., 79 F.3d 1086, 1100, n. 19 (11th Cir.1996) ("[T]he time for filing an EEOC charge begins to run when the employee receives unequivocal notice of the adverse employment decision."). In holding that the triggering event for limitations purposes is the employer's notice to the employee of the adverse employment decision, the Supreme Court explained that the act of termination is not itself illegal. *See* Ricks, 449 U.S. at 258-59, 101 S.Ct. 498. Rather, the illegal act is the improper motive in the employment decision itself. Id.

(Emphasis added).

Plaintiff did not timely file her EEOC charge before expiration of the 180 day limitations period, therefore her lawsuit is time barred and must be dismissed for failure to exhaust administrative remedies.

The U. S. Supreme Court has held that "strict adherence" to this procedural requirement "is the best guarantee of evenhanded administration of the law." Mohasco Corp. v. Silver, 447 U.S. 807,

826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980)

The Court in <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)determined that whether a claim is timely or not depends on the type of claim at issue. Disparate treatment and retaliation claims, classified as "discrete acts of discrimination or retaliation" are treated differently from claims alleging a hostile working environment.  In cases involving "discrete acts of discrimination" such as "termination, failure to promote, denial of transfer, or refusal to hire" the timely filing requirement creates an absolute bar to recovery. <u>Id.</u> at 114; <u>Ledbetter v. Goodyear Tire and Rubber Co., Inc.</u>, 421 F.3d 1169, 1178 (11th Cir.2005). The Court's rationale was that such discrete actions are easy to identify and each individual act of discrimination constitutes a separate unlawful employment practice that occurs on the day that it happens. <u>Morgan</u>, 536 U.S. at 109.

**B.    GENERAL LEGAL PRINCIPLES UNDER TITLE VII**

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin."  42 U.S.C. §2000(e)-2(a)(1).

Plaintiff's claims must be examined using the analytical framework established by the United States Supreme Court in <u>McDonell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) and <u>Texas Dept. of Community Affairs v. Burdin</u>, 450 U.S. 248 (1981).  Under that framework, the plaintiff employee must first establish a prima facie case of discrimination, which creates a presumption of discrimination.  Once the employee has set forth evidence constituting a prima facie case, the burden then shifts to the employer to "produce evidence that the plaintiff was rejected, or someone else was

preferred, for a legitimate, non-discriminatory reason." <u>Burdin</u>, 450 U.S. at 254; <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 143 (2000). This burden is one of production, not persuasion. <u>Id.</u> It "can involve no credibility assessment." <u>Reeves v. Sanderson Plumbing</u>, <u>supra</u> at 143; <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 509 (1993). If the employer submits legitimate reasons for its actions, the presumption of discrimination drops from the case and the burden shifts back to the plaintiff employee to discredit the proffered non-discriminatory reasons by showing that they are merely a pretext for unlawful discrimination. <u>See</u> <u>McDonell Douglas</u>, 411 U.S. at 802-05; <u>Burdin</u>, 450 U.S. at 252-256.

At the pretext stage, in order to survive summary judgment, the plaintiff must provide sufficient evidence to allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision. <u>Combs v. Plantation Patterns</u>, 106 F. 3d 519, 538 (11th Cir. 1997), <u>cert. den'd</u>, 522 U.S. 1045 (1998). A plaintiff may do this (1) by showing that the employer's legitimate non-discriminatory reason should not be believed; or (2) by showing that in light of all the evidence a discriminatory reason more likely motivated the decision. <u>Mayfield v. Patterson Pulp Co.</u>, 101 F. 3d 1371, 1376 (11th Cir. 1996).

In order to recover under Title VII the plaintiff employee must prove that she suffered an adverse employment action "because of" her sex and that her sex played a motivating role in or contributed to the defendant employer's decision. <u>Texas Dept. of Community Affairs v. Burdin</u>, 450 U.S. 248, 253 (1981). Put another way, the ultimate question is whether the defendant employer acted with discriminatory intent. <u>Williams v. Alabama Indus. Dev't. Training</u>, 146 F. Supp. 2d 1214, 1219 (M.D. Ala. 2001). A prima facie case of unlawful discrimination exists if the plaintiff establishes that she is a member of the protected class; that she performed her job satisfactorily; and

that plaintiff suffered an adverse employment action under circumstances giving rise to an inference of discrimination. <u>McDonell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993).

In this case, Plaintiff cannot succeed because she fails to establish a prima facie case. Plaintiff failed to perform her job satisfactorily. Additionally, the City has offered a legitimate, non-discriminatory reason for its actions and therefore Plaintiff cannot show pretext.

## C. PLAINTIFF'S CLAIMS

Plaintiff contends that she would often sleep in her truck at the lot rather that go in the "bull room" at lunch with male employees because she considered it a hostile environment due to the language and comments. *(Complaint ¶¶ 11& 12)*. Plaintiff alleges that male employees were allowed to sleep during their breaks and in fact her supervisor and other male supervisors would sleep in the office. *(Complaint ¶ 21)*.

Plaintiff has not given dates for any of the allegations that she has made regarding discrimination other than April 23, 2003. Plaintiff admitted at her hearing that she had not made any complaints against Billy Sexton until her termination proceedings in April and May 2003. *(DX 10, Transcript Personnel Board Hearing: Smith testimony, page 150 and DX 11, Memos dated April 24 and April 29, 2003 from Stephanie Smith to Jim Wilder)*. Therefore even if Plaintiff's claims were actionable and established discrimination on the basis of gender, they would be barred because she did not file a charge with the EEOC within the applicable 180 day statute of limitations. Plaintiff has not exhausted her administrative remedies on any of these claims.

Plaintiff also states that she had not been written up prior to Sexton becoming her supervisor. *(Complaint ¶ 18)*. However it is clear from Smith's personnel record that she was written up twice

before Sexton became her supervisor. Smith was counseled by her supervisor, Donald Thomas, on 2/1/96 for leaving her assigned work area without permission and for taking an excessively long lunch break and on 1/26/98, by Assistant Maintenance Superintendent, Douglas Jones, for not being at her work site. *(DX 9, Excerpts from Personnel File of Stephanie Smith, Disciplinary Hearing, May 8, 2003 and DX10, Transcript Personnel Board Hearing: Smith testimony, pages 152 & 153).*

Plaintiff had several prior infractions. Plaintiff signed the written Letter of Reprimand on April 28, 2003, which advised that considering her past record of three suspensions, she would be recommended for dismissal. *(DX 9, Excerpt from Personnel File of Stephanie Smith, Letter of Reprimand dated April 23, 2003 and signed by Smith April 28, 2003.)* As previously stated, an employee in Maintenance was usually terminated on the third disciplinary action. *(DX 10, Transcript Personnel Board Hearing: Sexton testimony, pages 12 &13; Wilder testimony, page 46).* Plaintiff was allowed to receive a third suspension for thirty days in November 2002. *(DX 10, Transcript Personnel Board Hearing: Sexton testimony, pages 12 & 13; Wilder testimony, page 46).* In fact, this was not the first time that Plaintiff had been warned about the same conduct and relying on her employees. *(DX 10, Transcript Personnel Board Hearing: Singleton testimony, pages 112-114).* Although Plaintiff had previously been disciplined for sleeping on the job, there were other times that she was caught sleeping and not written up. *(DX 10, Transcript Personnel Board Hearing: Smith testimony, page 167 & Sexton testimony, pages 15 & 16).*

Smith also claims that Sexton stated if he got rid of her he would never have another woman working for him. *(Complaint ¶19).* However others heard him just say that he would never hire another woman. *(DX 10, Transcript Personnel Board Hearing: Orr testimony, pages 104, 107 & 108).* It is unclear when the statement was made. At the Personnel Board hearing, Sexton admitted

14

that, out of anger, he might have made the statement that he would never hire a woman again but that he had interviewed women several times for that job since then. *(DX 10, Transcript Personnel Board Hearing: Sexton testimony, pages 149 & 150).*

The primary issue in a gender based disparate treatment claim is whether the employer intentionally discriminated against the employee because of her gender. *See* U.S. Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). In order to establish a prima facie case of disparate treatment on the basis of gender, a plaintiff must show that: (1) she is a member of a protected class; (2) an adverse employment action occurred; (3) she and a similarly situated person, outside of her protected class, received dissimilar treatment; and (4) sufficient evidence exists to infer a nexus or causal connection between sex and the disparate treatment. *See* Wright v. Dep't of Corrections, 31 F.Supp.2d 1336, 1342 (M.D.Ala.1998) (citing McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976)

As similarly situated persons, Smith relies on "other male employees", "the supervisor, Sexton", "other male supervisors" and "two summer workers" as comparators in her claim for discrimination. *(Complaint ¶¶ 21 & 27).* At the Personnel Board hearing, Plaintiff put on witness Mark Singleton that testified that he had seen laborers not foremen asleep during lunch. *(DX 10, Transcript Personnel Board Hearing: Singleton testimony, page 111).*

Eleventh Circuit precedent states that if employees are not similarly situated then the different application of workplace rules does not constitute illegal discrimination. E.g. Latham v. Dept. of Children and Youth Servs., 172 F. 3d 786, 793 (11th Cir. 1999). To determine whether employees are similarly situated for purposes of plaintiff's prima facie case, a court must consider whether the employees are involved in the same or similar conduct and are treated in different ways. See Silvera

v. Orange Co. School Bd., 244 F. 3d 1253, 1259 (11th Cir. 2000). The comparator's conduct must be "nearly identical" to the plaintiff's conduct so that courts will not second guess an employer's reasonable decisions. Id.

To be deemed 'similarly-situated,' the individual with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. Anderson v. Twitchell - A Tyco International Ltd., Co., 76 F.Supp.2d. 1279 (M.D.Ala. 1999). In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are [treated or] disciplined in different ways. Id. The simple allegation that there was someone else, without an adequate showing that she is similarly-situated in all relevant respects, fails to make out a prima-facie case. Id.

Smith had committed many other infractions. Smith signed the written Letter of Reprimand on April 28, 2003, which advised that considering her past record of three suspensions, she would be recommended for dismissal. *(DX 9, Excerpt from Personnel File of Stephanie Smith, Letter of Reprimand dated April 23, 2003 and signed by Smith April 28, 2003.)* As previously stated an employee was usually terminated on the third disciplinary action. *(DX 10, Transcript Personnel Board Hearing: Sexton testimony, pages 12 &13; Wilder testimony, page 46).* Smith was allowed to receive a third suspension for thirty days in November 2002. *(DX 10, Transcript Personnel Board Hearing: Sexton testimony, pages 12 & 13; Wilder testimony, page 46).* Although Smith had previously been disciplined for sleeping on the job, there were other times that she was caught

sleeping and not written up.

Plaintiff has not submitted a comparator or similarly situated employee to be considered by the Court. In <u>Gadsden v. Home Depot, U.S.A. Inc.</u>, 129 F. Supp. 2d 1355 (S.D. Fla. 2001) the court held that in order for an employee to be similarly situated the employee must report to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline and must have engaged in conduct similar to the plaintiff. If the conduct is not of the same in quantity and quality as the alleged complaints of plaintiff, the comparator employee is not deemed a similarly situated employee. Consequently, Plaintiff cannot make a prima facie case for disparate treatment. See <u>Daniels v. Wal-Mart Stores</u>, 153 F. 3d 719 (4th Cir. 1998)(court found that plaintiff failed to identify any employee who was treated in a manner inconsistent with Wal-Mart policy or any similarly situated employee who was treated any different than he was; the employees that plaintiff submitted were similarly situated were each disciplined according to company policy although perhaps not in the same manner as plaintiff).

Courts are clear that summary judgment is appropriate where a plaintiff is unable to show the existence of similar situated employees that were treated more favorably by the employer. <u>Hollifield v. Reno</u>, 115 F. 3d 1555, 1562 (11th Cir. 1997); <u>Mandvill v. City of Coral Gables</u>, 50 F. Supp. 2d 1320, 1329 (S.D. Fla. 1999).

Additionally, because Plaintiff's discriminatory discharge claim is premised upon her disparate treatment claim, which she failed to establish, the discriminatory discharge claim is due to be dismissed as a matter of law.

Federal courts do not sit as super-personnel departments that reexamine an entity's business decisions. <u>Elrod v. Sears & Roebuck Co.</u>, 939 F. 2d 1466, 1470 (11th Cir. 1991). No matter how

medieval a firm's practice, no matter how high-handed its decision or process, no matter now mistaken the firm's managers, the law does not interfere.  Id..

Finally, the City of Montgomery cannot be held liable for the termination of Smith because Mayor Bright and the City of Montgomery were not the final policy making authority.  It is true that Mayor Bright approved the recommendation for the termination of Smith. *(DX 12, Affidavit of Karen Cason).*  Nonetheless, Smith had the right to appeal his decision to the Montgomery City and County Personnel Board. *(DX 12, Affidavit of Karen Cason).*   It is a separate entity from the City of Montgomery. *(DX 12, Affidavit of Karen Cason).*  Smith made that appeal. *(DX 12, Affidavit of Karen Cason).* A full evidentiary hearing was held on November 10, 2003. *(DX 12, Affidavit of Karen Cason).* The Personnel Board upheld the recommended termination. *(DX 12, Affidavit of Karen Cason).*

Where an entity or an individual are not the final policy making authority concerning an employment decision such as those typically governed by an independent personnel board, the non-policy making body or individual against whom the claim is made will not be liable.  Alexander v. Fulton Co., Georgia, 207 F. 3d 1303, 1315 (11th Cir. 2000); Scala v. City of Winter Park, Florida, 116 F. 3d 1396 (11th Cir. 1997).  Applying that principle in Quinn v. Monroe County, 330 F. 3d 1320 (11th Cir. 2003) the court held that an administrator who terminated a director was not the final policy making authority with respect to that termination. *See also* Vincent v. City of Talladega, 980 F. Supp. 410 (N.D. Ala. 1987).

## V.

### CONCLUSION

Plaintiff's EEOC charge was not timely filed with the EEOC.  The alleged act of

18

discrimination occurred on April 23, 2003. The EEOC charge was not filed until November 25, 2003. Therefore Plaintiff's lawsuit is barred by the applicable statute of limitations and for failure to exhaust administrative remedies.  In order for the Court to obtain judicial consideration of a [Title VII] claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred." <u>Pijnenburg v. West Ga. Health Sys., Inc.,</u> 255 F.3d 1304, 1305 (11th Cir.2001); 42 U.S.C. § 2000e-(5)(e)(1) ("A charge under this section shall be filed within one hundred eighty days after the alleged unlawful employment practice occurred....").

Defendant City of Montgomery submits that Plaintiff has failed to present a prima facie case of discrimination regarding her particular claims.  With respect to her termination, Plaintiff received three suspensions before termination rather than the two allowed for other maintenance employees. Plaintiff fails to demonstrate another similarly situated male employee who engaged in the same conduct but was disciplined in a different manner.

Even if the Plaintiff made out a prima facie case of discrimination, the City of Montgomery has demonstrated legitimate, non-discriminatory reasons for its decisions and actions.  This Court should not sit as a super-personnel department over the decisions of the City of Montgomery. Whether the Court agrees with them or not, the decisions should be upheld by granting summary judgment in favor of the City.

Plaintiff has failed to demonstrate that any of the proffered reasons given by the City of Montgomery and its personnel for their actions were pretextual in nature.  On that basis as well as the others discussed above, summary judgment in this case is appropriate with respect to all of Plaintiff's claims.

Where an entity or an individual are not the final policy making authority concerning an

employment decision such as those typically governed by an independent personnel board, the non-policy making body or individual against whom the claim is made will not be liable. <u>Alexander v. Fulton Co., Georgia</u>, 207 F. 3d 1303, 1315 (11th Cir. 2000); <u>Scala v. City of Winter Park, Florida</u>, 116 F. 3d 1396 (11th Cir. 1997).

Because Plaintiff's discriminatory discharge claim is premised upon her disparate treatment claim, which she failed to establish, the discriminatory discharge claim is due to be dismissed as a matter of law.

Submitted this 26th day of January, 2007.

<u>/s/ Kimberly O. Fehl</u>
Kimberly O. Fehl (FEH001)

City of Montgomery
P.O. Box 1111
Montgomery, Alabama 36101-1101
Telephone:     (334) 241-2717
Facsimile:     (334) 241-2310

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have mailed a copy of the above and foregoing Memorandum of Law in Support of Defendant's Motion for Summary Judgment to the parties or attorneys listed below by electronic mail or by placing a copy of same in the United States Mail, postage prepaid, this 26th day of January, 2007:

J. Bernard Brannan, Jr.
The Brannan Law Firm P.C.
602 South Hull Street
Montgomery, Alabama 36104

/s/Kimberly O. Fehl
Of Counsel