IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| STEPHANIE SMITH, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CASE NO.:  2:06 CV59-C |
| | * | |
| CITY OF MONTGOMERY, | * | |
| | * | |
| Defendant. | * | |

**RESPONSE OF DEFENDANT TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR  SUMMARY JUDGMENT**

Defendant, City of Montgomery, in response to Plaintiff's Memorandum Brief in opposition of Defendant's Motion for Summary Judgment, states unto the Court the following:

*I.*     *TERMINATION OF AN EMPLOYEE IS NOT AN UNLAWFUL ACT*

In the present case, Smith relies on the ultimate termination as the violation that triggers the statute of limitations.  However, said reliance is in error and should not circumvent the correct timely filing deadline.  The act of terminating an employee, in and of itself, is not unlawful.  It is the intent and/or motivating factor behind the termination that gives question. The illegal act is the improper motive in the employment decision**.**   Delaware v. Ricks, 449 U.S. 250, 101 S.Ct. 498 (1980).

In support of her argument that the EEOC charge was timely filed, Smith submits the holding in Wright v. AmSouth, 320 F.3d 1198 (11th Cir. 2003) which states, "The key determination then is when Wright received unequivocal notice of his termination."   In  Wright v. AmSouth, the employer, AmSouth, claimed that Wright's ADEA lawsuit was barred by the applicable statute of limitations.  The District Court granted Defendant's summary judgment and found that although the

decision to terminate Wright was not expressly communicated to him until a later date, Wright should have known he was going to be terminated when someone else was hired for his job. Therefore he was barred by the applicable statute of limitations. The Eleventh Circuit reversed the District Court finding that because the final decision to terminate Wright remained uncommunicated to him, it had no impact on the statutory filing deadline for filing an Equal Employment Opportunity Commission (EEOC) charge.

The facts in the present case and the facts in <u>Wright</u> are not comparable. Smith received immediate notice that she was going to be recommended for dismissal. Additionally, she had received more suspensions than were normally allowed other maintenance employees and warned that another disciplinary action would result in her dismissal. Although, Maintenance Department employees are generally terminated after receiving two suspensions, Smith was allowed to receive a third suspension for thirty days rather than termination in November 2002. *(DX 10, Transcript Personnel Board Hearing: Sexton testimony, pages 12 &13; Wilder testimony, page 46 & 48).*

Smith was reprimanded on April 23, 2003, by Sexton in the presence of Gail Gipson, Maintenance Superintendent, for her lack of leadership as a supervisor due to sleeping on the job. *(DX 10, Transcript Personnel Board Hearing: Sexton testimony, pages 35 & 36).* Smith signed the written Letter of Reprimand on April 28, 2003, which advised that with this infraction and her past record of three suspensions, she would be recommended for dismissal. *(DX 9, Excerpt from Personnel File of Stephanie Smith, Letter of Reprimand dated April 23, 2003 and signed by Smith on April 28, 2003).*

Therefore on April 28, 2003, Smith acknowledged by her signature that she was being recommended for dismissal. At the latest, Smith's EEOC charge should have been filed by October

28, 2003. There was nothing to prohibit Smith from filing a charge with the EEOC at the same time that she submitted her memos to Jim Wilder alleging unfair treatment. *(DX 11, Memos dated April 24 and April 29, 2003 from Stephanie Smith to Jim Wilder).*

However, the process of termination in this case is not the event that triggers the 180 day clock. The alleged discriminatory act would be any different treatment by Billy Sexton of Smith, such as reprimanding her, when he did not reprimand male employees for the same conduct (i.e. sleeping on the job). Smith, in her sworn statement, stated the following in her EEOC complaint against City of Montgomery ("the City") on November 25, 2003:

> "I was employed as a Labor Foreman I with the City of Montgomery. The last approximately 4 years, my immediate supervisor was Billy Sexton. Mr. Sexton on 3 separate occasions, wrote me up and had me suspended. **And on April 23, 2003, he wrote me up and recommended that I be dismissed. I was the only female Labor Foreman under Mr. Sexton's supervision and he had not written up nor recommended male employees under his supervision, for the same conduct for which I was written up and suspended. Male employees have also been found to have committed the same conduct I did, for which I was dismissed and recommended for termination by Mr. Sexton; they have not been suspended or terminated….**
>
> …I believe that I was continuously written up by Mr. Sexton and ultimately he recommended my termination, which was upheld by the Mayor of the City of Montgomery and affirmed by the Montgomery City-County Personnel Board, because of my gender, female. **As male employees who had committed the same conduct were treated differently. Each thing that Mr. Billy Sexton wrote me up for in the 4 years that I was under his supervision, were pre-textual for sexual discrimination, as male employees who committed the same conduct were not treated the same way that I was.**

(Emphasis added). *(DX 1, EEOC Charge of Discrimination Number 130-2004-00779).*

If in fact male employees were given favorable treatment by Sexton over Smith, she should have reported it the first time it happened. Prior to April 23, 2003, Smith never complained to anyone that she was treated differently by her supervisor, Billy Sexton, because she was female. *(DX*

*10, Transcript Personnel Board Hearing: Smith testimony, pages 149&150).*

Smith had previously been disciplined for sleeping on the job, there were other times that she was caught sleeping and not written up. *(DX 10, Transcript Personnel Board Hearing: Sexton testimony, pages 15 & 16).* However, Smith never complained that she was written up for sleeping on the job because she was female until the final incident that occurred on April 23, 2003. Smith was disciplined by Billy Sexton in June of 1999 and April 2001 for sleeping on the job. However she never complained of discrimination. If Smith's allegation that because she was female, she was discriminated against due to being the only person that was written up for sleeping and the males were allowed to sleep without being subject to discipline, then Smith should have complained of this action during one of her prior disciplinary actions for sleeping.

Termination of an employee is not illegal. To consider as valid Smith's argument that her statute of limitations did not begin until after the due process hearings and appeal process would suggest that the action of the Mayor or the Personnel Board could reverse an alleged act of discrimination by another City employee. Smith's argument supports the premise that the appeal process and subsequent action of the Mayor or the Personnel Board could nullify the original triggering event thereby curing any alleged act of discrimination by another City employee.

Smith's termination was not the alleged discriminatory act. Smith's termination is the result of her actions on April 23, 2003 and of her prior history record and the progressive disciplinary policy. She had received previous reprimands and counseling forms for the same conduct but was recommended for dismissal. If Smith was being treated differently as alleged, any reprimand at all on April 23, 2003 gave Smith notice of alleged discrimination, regardless of the outcome of the disciplinary process. As addressed by this Court in Brewer v. Alabama, 111 F.Supp.2d 1197, 1204

(M.D.Ala.2000)

> "The limitations period begins to run when an employee receives notice of the alleged discriminatory act, "**not the point at which the consequences of the act become painful**." Chardon v. Fernandez, 454 U.S. 6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (holding that the plaintiff's employment discrimination claim accrued when "the operative decision was made-and notice given-in advance of a designated date on which employment terminated"); *see also* Delaware v. Ricks, 449 U.S. at 250, 101 S.Ct. 498 (1980) (holding that the limitations period commenced on the date the adverse employment decision was made and communicated to the plaintiff, even though one of the effects of the decision did not occur until later); Grayson v. K Mart Corp., 79 F.3d 1086, 1100, n. 19 (11th Cir.1996) ("[T]he time for filing an EEOC charge begins to run when the employee receives unequivocal notice of the adverse employment decision."). **In holding that the triggering event for limitations purposes is the employer's notice to the employee of the adverse employment decision, the Supreme Court explained that the act of termination is not itself illegal.** *See* Ricks, 449 U.S. at 258-59, 101 S.Ct. 498. **Rather, the illegal act is the improper motive in the employment decision itself**. Id.
>
> (Emphasis added).

In cases involving "discrete acts of discrimination" such as "termination, failure to promote, denial of transfer, or refusal to hire" the timely filing requirement creates an absolute bar to recovery. Id. at 114; Ledbetter v. Goodyear Tire and Rubber Co., Inc., 421 F.3d 1169, 1178 (11th Cir.2005). Smith did not timely file her EEOC charge before expiration of the 180 day limitations period, therefore her lawsuit is time barred and must be dismissed for failure to exhaust administrative remedies.

**II.    *EEOC ADMINISTRATIVE PREREQUISTIES AND STATUTE OF LIMITATIONS***

Smith cannot use time barred evidence to prove a case of gender discrimination.   The

availability of due process proceedings provided to government employees cannot reverse or nullify true discriminatory conduct. Neither the department head, the Mayor nor the City/County of Montgomery Personnel Board can undo an act of discrimination, although Smith supports such a theory in her argument, in an effort to get around the applicable statue of limitations. Smith never alleged any acts of discrimination other than April 23, 2003 except to contend that the due process proceedings provided to her as a city employee were subsequent acts of discrimination. In order for the Court to obtain judicial consideration of a [Title VII] claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred." Pijnenburg v. West Ga. Health Sys., Inc., 255 F.3d 1304, 1305 (11th Cir.2001); 42 U.S.C. § 2000e-(5)(e)(1) ("A charge under this section shall be filed within one hundred eighty days after the **alleged unlawful employment practice occurred.**..."). (Emphasis added).

In Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Smith submits through the testimony of Mark Singleton that on a previous occasion, Billy Sexton stopped him from going to the truck to wake Smith and Singleton had to go to the office of Smith's husband so he could call her or get someone to wake her up. *(Page 3, Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment).* However, Smith admitted that she had never made any complaints against Billy Sexton until her termination proceedings beginning in April 2003. *(DX 10, Transcript Personnel Board Hearing: Smith testimony, page 150 and DX 11, Memos dated April 24 and April 29, 2003 from Stephanie Smith to Jim Wilder).*

Smith did not timely file her EEOC charge before expiration of the 180 day limitations period, therefore her lawsuit is time barred and must be dismissed for failure to exhaust administrative remedies.

### III.   EVIDENCE OF DISCRIMINATION

#### A. Claim of Direct Discrimination

Smith claims that she does not have to establish the requirements set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) to determine a prima facie case of discrimination because in the present case, there is direct evidence of discrimination.  Smith cites the finding in Wright v Southland Corporation, 187 F.3d 1287 (11th Cir. 1999), "…that direct evidence of employment discrimination is evidence from which a trier of fact could conclude, based on a preponderance of the evidence, that an adverse employment action was taken against the plaintiff on the basis of a protected personal characteristic."

Smith contends that she has direct evidence because of allegations of Sexton stating that if he got rid of her he would never have another woman working for him. To substantiate a preponderance of the evidence of direct discrimination, Smith must demonstrate to the Court that the comment infers that Sexton's interest in hiring another male motivated his decision to terminate her.  Smith, therefore, cannot prevail on a claim of direct discrimination either.   Smith was reprimanded more than once by Sexton for the same conduct but continued to do the same thing.   Smith admitted that she had never made any complaints against Billy Sexton until her termination proceedings beginning in April 2003.  *(DX 10, Transcript Personnel Board Hearing: Smith testimony, page 150 and DX 11, Memos dated April 24 and April 29, 2003 from Stephanie Smith to Jim Wilder).*

Finally, at the Personnel Board hearing, Sexton admitted that, out of anger, he might have made the statement that he would never hire a woman again but that he had interviewed women several times for that job since then. *(DX 10, Transcript Personnel Board Hearing: Sexton testimony, pages 149 & 150).*  Direct evidence of discrimination under Title VII is evidence that, if

believed, would establish that the employer's decision was based upon discriminatory intent without inference or presumption. E.E.O.C. v. Joe's Stone Crab, Inc., 220 F.3d 1265 (11th Cir.2000). Evidence that is subject to multiple interpretations or that merely suggests discrimination does not constitute direct evidence. Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th Cir.1997). Based on the foregoing, Smith cannot prevail on her claim of direct evidence of discriminatory intent.

Finally, even if Smith could show direct evidence of discrimination, the City has provided evidence that the employment decision would have been made in the absence of discriminatory intent. "If a plaintiff can provide direct evidence of discriminatory intent, then the employer must prove by a preponderance of the evidence that the same employment decision would have been made in the absence of the discriminatory intent." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998); *see also* E.E.O.C. v. Beverage Canners, Inc., 897 F.2d 1067 (11th Cir.1990).

As previously stated, Smith was reprimanded more than once for the same conduct but continued to do the same thing. It is clear that Smith received more consideration than other Maintenance Department employees for opportunities to keep her job. The Maintenance Department used a graduated disciplinary system and, normally after two suspensions, an employee was recommended for termination on the third disciplinary action. *(DX 10, Transcript Personnel Board Hearing: Sexton testimony, pages 12 &13; Wilder testimony, page 46).* Smith was allowed to receive a third suspension for thirty days rather than termination in November 2002. *(DX 10, Transcript Personnel Board Hearing: Sexton testimony, pages 12 & 13; Wilder testimony, page 46).* Although Smith had previously been disciplined for sleeping on the job, there were other times that she was caught sleeping and not written up. *(DX 10, Transcript Personnel Board Hearing: Sexton testimony, pages 15 & 16).*

There was no entrapment by Sexton. Smith was reprimanded more than once for her lack of leadership as a supervisor and sleeping on the job. Smith knew that Sexton had previously reprimanded her and expressed dissatisfaction over the exact same thing that she did on April 23, 2003. *(Page 3, Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment and DX 10, Transcript of Personnel Board Hearing: Singleton testimony, pages 112-113).* However Smith continued to do it. If Smith truly felt discriminated against by Sexton because she was female, she had ample opportunity to tell a supervisor conducting her disciplinary hearings or file a charge with the EEOC. Yet Smith never raised the issue of sex discrimination until she was terminated for the same thing.

Finally, even if the Court determines that the comments of Sexton are direct evidence of discrimination, it is clear from Smith's affidavit filed with the EEOC and subsequent testimony that she is time barred from pursuing a claim of discrimination. All actions or comments by Sexton were alleged to have occurred on or before April 23, 2003. Smith did not timely file her EEOC charge before expiration of the 180 day limitations period, therefore her lawsuit is time barred and must be dismissed for failure to exhaust administrative remedies.

### B. *Prima Facie Case pursuant to <u>McDonell Douglas Corp. v. Green</u>*

Finally, Smith also fails in her argument that she has provided the necessary elements set out in <u>McDonell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) to establish a prima facie case of discrimination. A prima facie case of unlawful discrimination exists if the plaintiff establishes that she is a member of the protected class; that she performed her job satisfactorily; and that plaintiff suffered an adverse employment action under circumstances giving rise to an inference of discrimination. <u>McDonell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>St. Mary's Honor Ctr.</u>

v. Hicks, 509 U.S. 502, 506 (1993).

Smith cannot succeed in the present case because she fails to establish the prima facie elements. Plaintiff failed to perform her job satisfactorily. Additionally, the City has offered a legitimate, non-discriminatory reason for its actions and therefore Plaintiff cannot show pretext. Smith was reprimanded more than once for her lack of leadership as a supervisor and sleeping on the job. Smith knew that Sexton had previously reprimanded her and expressed dissatisfaction over the exact same thing that she did on April 23, 2003.

Additionally, Smith alleged in her affidavit that male foremen would leave the City lot and take more than a thirty minute lunch and others would sleep in their trucks. *(Affidavit of Stephanie Smith)*. However, Smith has submitted nothing other than general statements and conclusory allegations for the court to consider on summary judgment. There are no names of male foremen submitted as comparators. Courts are clear that summary judgment is appropriate where a plaintiff is unable to show the existence of similar situated employees that were treated more favorably by the employer. Hollifield v. Reno, 115 F. 3d 1555, 1562 (11th Cir. 1997); Mandvill v. City of Coral Gables, 50 F. Supp. 2d 1320, 1329 (S.D. Fla. 1999).

Federal courts do not sit as super-personnel departments that reexamine an entity's business decisions. Elrod v. Sears & Roebuck Co., 939 F. 2d 1466, 1470 (11th Cir. 1991). No matter how medieval a firm's practice, no matter how high-handed its decision or process, no matter now mistaken the firm's managers, the law does not interfere. Id.

Finally, Smith did not timely file her EEOC charge before expiration of the 180 day limitations period, therefore her lawsuit is time barred and must be dismissed for failure to exhaust administrative remedies.

IV.  *APPEAL TO THE CITY-COUNTY OF MONTGOMERY PERSONNEL BOARD*

As previously stated, the act of terminating an employee is not an unlawful act if there is no unlawful intent. Smith appealed her decision to the Personnel Board which is a separate entity from the City of Montgomery. *(DX 12, Affidavit of Karen Cason).* A full evidentiary hearing was held on November 10, 2003. *(DX 12, Affidavit of Karen Cason).* The Personnel Board upheld the recommended termination. *(DX 12, Affidavit of Karen Cason).*

Smith filed an action against the City County of Montgomery Personnel Board also. On July 26, 2004, the EEOC issued a Determination letter with recommended conciliation of the charges for EEOC Charge Numbers 130-2004-00779 against the City of Montgomery and 130-2004-00800 against the City-County of Montgomery Personnel Board. The EEOC stated that the Charging Party was recommended for discharge by the Respondent Employer (the City) and finally terminated by Respondent Personnel Board (City-County of Montgomery Personnel Board) based on her sex in violation of Title VII. *(DX 4, July 21, 2004, EEOC Determination Letter).* The City responded to the EEOC denying discrimination of any kind and explaining that the City and the City-County of Montgomery Personnel Board were two separate entities with independent decision making authorities. *(DX 5, August 9, 2004 Letter from City of Montgomery).*

Although Mayor Bright approved the recommendation for the termination of Smith, the triggering event in this case, is the alleged discriminatory treatment by Sexton of Smith because she is female. Smith did not timely file her EEOC charge before expiration of the 180 day limitations period, therefore her lawsuit is time barred and must be dismissed for failure to exhaust administrative remedies.

V.  *CONCLUSION*

Smith still has not presented any evidence to support that a discriminatory violation occurred. Smith cannot succeed in her claim of direct evidence of discrimination nor has she presented a prima facie case of discrimination regarding her particular claims. Plaintiff failed to perform her job satisfactorily.

Additionally, the City has offered a legitimate, non-discriminatory reason for its actions and therefore Plaintiff cannot show pretext. Smith received more favorable treatment by receiving three suspensions before termination rather than the two allowed for other maintenance employees. Smith has not submitted a similarly situated male employee who engaged in the same conduct but was disciplined in a different manner or not at all. Smith was reprimanded more than once for her lack of leadership as a supervisor and sleeping on the job. Smith knew that Sexton had previously reprimanded her and expressed dissatisfaction over the exact same thing that she did on April 23, 2003. Smith has failed to demonstrate that any of the proffered reasons given by the City of Montgomery and its personnel for their actions were pretextual in nature. Although reprimanded for the same thing many times, Smith never complained of discrimination prior to April 23, 2003 when she was recommended for termination.

On April 28, 2003, by her signature, Smith acknowledged that she was aware that she was being recommended for dismissal. Smith failed to file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory act. In order for the Court to obtain judicial consideration of a [Title VII] claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred." <u>Pijnenburg v. West Ga. Health Sys., Inc.,</u> 255 F.3d 1304, 1305 (11th Cir.2001). Therefore Plaintiff's lawsuit is barred by the applicable statute of limitations and for failure to exhaust administrative remedies.

This Court should not sit as a super-personnel department over the decisions of the City of Montgomery. Whether the Court agrees with them or not, the decisions should be upheld by granting summary judgment in favor of the City. Summary judgment in this case is appropriate with respect to all of Plaintiff's claims.

Submitted this 20th day of February, 2007.

/s/ Kimberly O. Fehl
Kimberly O. Fehl (FEH001)

City of Montgomery
P.O. Box 1111
Montgomery, Alabama 36101-1101
Telephone:   (334) 241-2717
Facsimile:   (334) 241-2310

**CERTIFICATE OF SERVICE**

I hereby certify that I have mailed a copy of the above and foregoing *Reply Brief* to the parties or attorneys listed below by electronic mail or by placing a copy of same in the United States Mail, postage prepaid, this 20th day of February, 2007:

J. Bernard Brannan, Jr.
The Brannan Law Firm P.C.
602 South Hull Street
Montgomery, Alabama 36104

/s/Kimberly O. Fehl
Of Counsel