IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STEPHANIE SMITH,                     )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )        CASE NO. 2:06-cv-059-MEF-CSC
                                     )            (WO-Not for Publication)
CITY OF MONTGOMERY,                  )
                                     )
        Defendant.                   )

## MEMORANDUM OPINION AND ORDER

Plaintiff Stephanie Smith ("Smith") brings suit against her former employer, the City

of Montgomery, Alabama ("Montgomery") pursuant to Title VII of the Civil Rights Act of

1964, as amended. In this action, she contends that Montgomery terminated her employment

as a Labor Foreman I because of her sex. This cause is before the Court on Montgomery's

January 26, 2007 Motion for Summary Judgment (Doc. # 9). Montgomery contends that

Smith's claim is not viable because she failed to make file a timely Charge of Discrimination

with the Equal Employment Opportunity Commission ("EEOC"). Montgomery also argues

that the case fails to present triable issues on the merits. For the reasons set forth below, the

Motion for Summary Judgment is due to be GRANTED.

### JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The parties do not contest

personal jurisdiction and venue, and the Court finds adequate allegations in support of

personal jurisdiction and venue.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255.  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

## FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:

In 1994, Montgomery hired Smith to work in its Maintenance Department as a Labor Foreman I.  In February of 1996, Donald Thomas, then Smith's supervisor, counseled her for leaving her assigned work area without permission and for taking an excessively long lunch break.[1]  In January of 1998, Douglas Jones, then the Assistant Maintenance Superintendent

---

[1]  It appears from Smith's personnel records that she took an hour long lunch when she was only allowed thirty minutes.

counseled Smith for not being at her work site after a complaint from a private citizen about a city vehicle parked near a restaurant in such a way as to impede traffic.

In February of 1999, Billy Sexton ("Sexton") became Smith's immediate supervisor. On March 23, 1999, Sexton counseled Smith for abusing her leave time. On June 21, 1999, Sexton counseled Smith for showing poor leadership after it was learned she had been sleeping on the job and recommended that she be given a five-day suspension. This incident resulted in a hearing on June 28, 1999 before the Maintenance Director after which Smith received a three-day suspension for the offense in light of her disciplinary history. On January 3, 2001, Sexton counseled Smith for failing to provide a doctor's excuse for an absence on December 20, 2000. On April 23, 2001, Sexton counseled Smith for sleeping on the job and insubordination.[2] Sexton recommended that Smith receive a twenty-nine day suspension as a result of this incident and Smith's disciplinary history. This incident lead to a disciplinary hearing before the Maintenance Director after which Smith received a fourteen-day suspension for the offense in light of her disciplinary history. On October 31, 2002, Sexton counseled Smith for reporting to work late on October 30, 2002.[3] He sent her home without pay and recommended her dismissal. The Maintenance Director reviewed the recommendation and in light of the rule violation and Smith's disciplinary history, he also

---

[2] The insubordination was sleeping in the truck at the work site when Sexton had instructed her to clear out a tunnel with her crew.

[3] Smith was required to report to work by 7:00 a.m., but she did not arrive at work until 7:05 a.m.

recommended that she be dismissed.  Instead, the Mayor decided to suspend Smith for thirty calendar days.

On April 23, 2003, Smith drove her assigned work vehicle to the Maintenance Department at lunch time.  Her authorized lunch period was from 12:00 p.m. to 12:30 p.m. Many Maintenance Department employees took their lunch break in an area called "the bull room."  Smith did not like to take her breaks in the bull room because she did not feel comfortable in the atmosphere that she felt existed in the bull room.  Smith did send the employees under her supervision to take their lunch break and instructed them to come back to the truck at 12:30 p.m.  It is undisputed that Smith then went to sleep in the vehicle.

Sexton asked one of her crew where Smith was and learned she was in her assigned work vehicle.  Sexton then instructed her crew not to go back to the vehicle at 12:30 p.m. as she had directed.  Instead, Sexton waited until approximately 12:40 or 12:45 p.m. to seen if Smith came looking for her crew.  When she did not, he went out to her assigned vehicle and found Smith there sleeping.  Sexton counseled her for sleeping on the job and taking a long lunch break.  He advised her that she was not setting a good example for her subordinates.

On April 24, 2003, Smith sent a memorandum to James D. Wilder ("Wilder"), the Maintenance Department Director concerning "current working environment concerns." Smith complained that she found the "bull room" to be a loud place where vulgar language was used.  She specified that the "bull room" was an uncomfortable environment and that the language used there was offensive to "the female gender."  She then explained that due to

the uncomfortable environment in the "bull room" she spends her lunch breaks in her assigned city vehicle. She then explained that recently Sexton had intentionally tried to put her in a situation that would require disciplinary action and that he had done so by preventing her subordinates from returning to her assigned city vehicle at the end of the lunch break as she had told them to do. Smith also complained about a subordinate of hers who had been removed from her supervision after an "uncomfortable situation," but then was placed back on her crew. According to Smith's memo, Sexton explained the return of the employee by expressing concern that the employee would sue if not returned to the position and said to Smith something like "you know how them damn n_____s are." Smith, who is Caucasian, found the use of the racial epithet objectionable. Smith rounded out her complaints about Sexton by telling Wilder that she had heard that Sexton had said that he would like to get rid of her and that he would never have another female working for him.[4]

On April 28, 2003, Sexton wrote up a formal letter of reprimand for the April 23, 2003 incident. In that document he indicated that based on the incident and on Smith's past record of three suspensions he was recommended that she be dismissed.

On April 29, Smith sent Wilder another memo filled with complaints about Sexton. She stated that she had seen Sexton and an employee named Danny Faulkner sleeping at

---

[4] Smith does not contend that she heard Sexton make these statements. Sexton denies having said he wanted to get rid of Smith, but admits having said that he wouldn't have another woman working for him. Other employees have testified they heard Sexton say he would never hire another woman. There is no testimony before the Court that Sexton ever stated he wanted to get rid of Smith.

work.  She also complained that she had seen Sexton's vehicle parked behind Class Act Styling Salon during business hours and that on one occasion she put a note on his windshield.  According to Smith, Sexton latter admitted to her that he was in the tanning bed. She objected to this in her memo to Wilder and complained that she had once been disciplined for purchasing a personal item at a hardware store while her work crew was on a bathroom break.  Smith also claimed that Sexton had been seen shopping at Sam's Club Warehouse during work hours and driving his assigned city vehicle toward Elmore County during business hours.  Smith concluded her memo by stating that it was her opinion that Sexton was harassing her and that Sexton had done the same things he had taken disciplinary action against her for doing.

On May 8, 2003, Smith attended a disciplinary hearing before Wilder.  According to Wilder's summary of hearing, Smith admitted that she had been asleep and that she had previously been told that she could not sleep at work any more.  Wilder upheld Sexton's recommendation based on his finding that she had slept on the job and taken a longer than permissible lunch break.  Wilder also based his recommendation that Smith be dismissed on her three previous disciplinary suspensions: one for reporting to work late in October of 2002; one for being insubordinate and sleeping on the job in April of 2001 and for violation of rules concerning use of leave time in January of 2001; and one suspension in 1999 for sleeping on the job in July of 1999, abuse of leave time in March of 1999, not being at the work site in June of 1998, and excessively long lunch break in February of 1996.

Smith requested and received a hearing before the Mayor's office. This hearing was held on May 21, 2003. The Mayor's Executive Assistant conducted the hearing. After hearing from Smith and Wilder, the Executive Assistant to the Mayor indicated that he would recommend the termination of Smith's employment. On May 23, 2003, Montgomery's Mayor signed a Notification of Dismissal for Smith advising her of the termination of her employment. He also requested that the Personnel Department prepare the appropriate paperwork. The Mayor signed the Recommendation for Personnel Action form on June 3, 2003. This form states that dismissals are not "official" until approved by the Personnel Director. The Personnel Director signed the form on June 4, 2003. Smith took an unsuccessful appeal to the Montgomery City/County Personnel Board which resulted in an administrative hearing in early November of 2003.

On November 21, 2003, Smith signed a Charge of Discrimination with the EEOC in which she complained about certain disciplinary actions taken against her during her employment with Montgomery. The centerpiece of her Charge of Discrimination was the termination of her employment. She claims that her employment was terminated because of her sex. The EEOC received Smith's Charge of Discrimination on November 25, 2003. Eventually, Smith received a Notice of Rights letter from the EEOC.

In January of 2006, Smith filed this lawsuit against Montgomery. She brings claims pursuant to Title VII for alleged sex discrimination arising out of the termination of her employment.

8

## DISCUSSION

The Court will first address the merits of Montgomery's Motion for Summary Judgment to the extent that it argues that Smith fails to offer evidence of a *prima facie* case and that she lacks sufficient evidence of discriminatory discharge to require a trial of her claims. Title VII prohibits employers from discriminating against employees with respect to decisions relating to the termination of their employment. *See* 42 U.S.C. § 2000e-2(a)(1). "A Title VII disparate treatment plaintiff must prove that the defendant acted with discriminatory purpose." *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1184 (11th Cir. 1984). A plaintiff may attempt to do so by offering either statistical, direct, or circumstantial evidence. In this case, Smith contends that she has established a *prima facie* case of discriminatory termination by both direct evidence and circumstantial evidence.

### 1. Direct Evidence

Smith argues that her claim of sex discrimination with respect to the termination of her employment is supported by direct evidence. Specifically, she relies on the evidence that Sexton, her supervisor and the person responsible for disciplining her and recommending the termination of her employment, made statements indicating that he would never again hire another female employee. Smith contends this constitutes direct evidence that Sexton subjected her to disciplinary action and recommended the termination of her employment because she was a woman.

In the context of employment discrimination cases, it is well-settled that direct

9

evidence is evidence which, if believed, proves the existence of a fact in issue, such as the existence of a discriminatory motive, *without inference or presumption*; if the evidence merely suggests that the employer acted with a discriminatory motive then it is circumstantial evidence, not direct evidence. *See, e.g., Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1086-87 (11th Cir. 2004); *Standard v. A.B.E.L. Servs.*, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998); *Burrell v. Board of Trs. of Ga. Military Coll.,* 125 F.3d 1390, 1393 (11th Cir. 1997); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1987); *Carter v. City of Miami,* 870 F.2d 578, 582 (11th Cir. 1989);*Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir.1987). Direct evidence of discrimination is evidence which reflects a discriminatory attitude *correlating to the discrimination complained of* by the employee. *Wilson,* 376 F.3d at 1086. "Therefore, remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard,* 161 F.3d at 1330. Moreover, direct evidence is composed of "only the most blatant remarks, whose intent could be nothing other than to discriminate" on the basis of some impermissible factor. *Carter,* 870 F.2d at 582.

Having reviewed the evidentiary record as a whole, the Court finds no evidence which, if believed, proves the existence of discrimination without inference or presumption. Put another way, Smith has pointed to nothing that constitutes direct, rather than circumstantial evidence that her employment was terminated because of her sex. The Sexton comment is not direct evidence. There is no evidence that suggests that the comment was

made at the time Sexton was recommending the termination of Smith's employment.

Moreover, the comment does not specifically refer or correlate to Smith or the termination

of her employment. While the statement may be circumstantial evidence of a broader sexist

motive on Sexton's part, this evidence does not establish, without inference or presumption,

discriminatory intent to terminate her employment because of her sex.

### 2. Circumstantial Evidence

In evaluating disparate treatment claims supported by circumstantial evidence, courts

within this circuit and elsewhere rely on the framework established by the United States

Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and *Texas Dep't*

*of Community Affairs v. Burdine,* 450 U.S. 248 (1981). *See, e.g., Wilson v. B/E Aerospace,*

*Inc.,* 376 F.3d at 1087.

> Under this framework, the plaintiff first has the burden of
> establishing a prima facie case of discrimination, which creates
> a rebuttable presumption that the employer acted illegally. A
> plaintiff establishes a prima facie case of disparate treatment by
> showing that she was a qualified member of a protected class
> and was subjected to an adverse employment action in contrast
> with similarly situated employees outside the protected class.
> The methods of presenting a prima facie case are not fixed; they
> are flexible and depend to a large degree upon the employment
> situation.

*Id.* (internal citations omitted). Once a plaintiff establishes a prima facie case, the employer

must articulate a legitimate, non-discriminatory reason for its actions. *Id.* The employer has

a burden of production, not a burden of persuasion, and it need not persuade the court that

it was actually motivated by the proffered reasons. *Id.*

If an employer satisfies its burden by articulating a non-discriminatory reason, it rebuts the presumption of discrimination created by the prima facie case. *Id.* The burden of production then shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination. *Id.* The plaintiff may satisfy this burden of showing pretext by persuading the court either directly that a discriminatory reason more than likely motivated the employer or indirectly that the proffered reason for the employment decision is not worthy of belief. *See, e.g., Burdine,* 450 U.S. at 256. The plaintiff may accomplish this in a number of ways. Recognized ways of establishing pretext in cases involving the termination of an employee for alleged violation of a work rule include a showing by the plaintiff either that she did not violate the work rule or that, if she did, other employees not within the protected class who engaged in similar acts were not similarly treated. *See, e.g., Anderson v. Savage Labs., Inc.,* 675 F.2d 1221, 1224 (11th Cir. 1982).

In this case, Smith claims that the termination of her employment was discriminatory.

> A plaintiff's prima facie case for a discharge-discrimination claim must show the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position at issue; (3) the plaintiff was discharged despite his qualification; and (4) the plaintiff was subject to differential treatment, that is, he was either (a) replaced by someone who was not a member of the plaintiff's protected class or (b) a similarly situated employee who was not a member of the protected class engaged in nearly identical conduct and was not discharged.

*Keel v. U.S. Dep't of Air Force*, 256 F. Supp. 2d 1269, 1285 (M.D. Ala. 2003), *aff'd without opinion*, 99 Fed. Appx. 880 (11th Cir. Mar 2, 2004); *Davis v. Qualico Miscellaneous Inc.,*

161 F. Supp. 2d 1314, 1319 (M.D. Ala. 2001). *Accord, Williams v. Motorola,* 303 F.3d 1284, 1293 (11th Cir. 2002). On the record before it, the Court finds that Smith has established a *prima facie* case. As a woman, she is a member of a protected class. Smith has made a sufficient evidentiary showing as to her qualifications for the position she held. There is no dispute that the termination of her employment constitutes an adverse employment action. The facts, when viewed in the light most favorable to Smith, establish that after the termination of her employment, Montgomery filled her vacant position with a male employee.

Having found that Smith has established a *prima facie* case of discriminatory discharge, the Court must now examine whether the employer has offered a legitimate, non-discriminatory reason for the termination of Smith's employment. Once a plaintiff alleging employment discrimination has established a *prima facie* case, thereby raising an inference that she was the subject of intentional sex discrimination, the burden shifts to the defendant to rebut this inference by presenting legitimate, non-discriminatory reasons for its employment action. *See, e.g., Burdine,* 450 U.S. 248. This burden is "exceedingly light." *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1061 (11th Cir. 1994).

Montgomery has met its burden in this case. The Eleventh Circuit Court of Appeals has made it plain that an employee's violation of company policies or procedures constitutes a legitimate, non-discriminatory reason for an adverse employment action. *See, e.g., Bogle v. Orange County Bd. of Com'rs,* 162 F.3d 653, 657 (11th Cir. 1998). The documentary

records relating to the termination of Smith's employment consistently identify her violation of work rules on April 23, 2003 and her past record of conduct warranting disciplinary action including repeated suspensions as the reason for the termination of her employment. Montgomery's records also consistently indicate a concern about Smith's behavior constituting a bad example for employees under her supervision.

Where, as here, the defendant meets its burden of articulating a legitimate, non-discriminatory reason for its actions, a plaintiff alleging employment discrimination has the opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination. *See, e.g., McDonnell Douglas,* 411 U.S. 792. There are a variety of ways for a plaintiff to establish pretext, or in opposition to a motion for summary judgment to establish that a jury question exists as to whether the employer's proffered reason was a pretext for discrimination. Nevertheless, in considering a plaintiff's evidence of pretext, this court is mindful that "[t]he inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions[.]" *Holifield v. Reno,* 115 F.3d 1555, 1565 (11th Cir. 1997). Indeed, if an employer honestly believes that the employee has violated company policy, the truth or accuracy of the report is irrelevant. *See Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1363 n.3 (11th Cir. 1999), *cert. denied,* 529 U.S. 1109 (2000).

A plaintiff claiming employment discrimination and seeking to establish that the employer's legitimate, non-discriminatory reason is pretextual can show that she did not

14

engage in the conduct for which the employer claims the plaintiff was fired.  Here, it is undisputed that Smith violated Montgomery's written policies, policies of which she was clearly aware, and defied instructions she had received from a superior regarding sleeping during work hours.[5]  Consequently, there is no dispute that she engaged in the conduct for which the employer claims she was fired.  Smith cannot use this recognized means of establishing a issue of fact relating to whether the proffered reason for the adverse employment action was pretextual.

Alternatively, a plaintiff may establish pretext if that plaintiff can identify other employees outside of the protected class *who the employer knew engaged conduct nearly identical to that for which the plaintiff was discharged, but who the employer retained*.  This means of establishing pretext is also unavailing to Smith.  She cannot identify any employees outside of the relevant protect class for purpose of any of the claims in this case who the employer knew engaged in nearly identical conduct, that is conduct of a materially similar quality and quantity, but who were retained when Smith was discharged.[6]  In this case, that

---

[5] Smith argues that Sexton set her up for the work rule violation by prohibiting her subordinates from waking her up at the end of the lunch break.  She assumed the risk of such a result when she went to slept in her assigned vehicle and elected to rely on someone waking her up rather than setting an alarm.

[6] In evaluating this claim, the Court must be mindful of the binding precedent from the Eleventh Circuit Court of Appeals which requires Smith to be similarly situated in all relevant respects to those comparators she identifies.  *See, e.g., Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1082 (11th Cir. 2005) (doctor discharged from clinic due to patient complaints about his conduct who couldn't show that he was replaced by someone outside his protected class and who couldn't show that a comparable person outside his protected class received "nearly identical" complaints, but was not fired failed to establish a prima

15

conduct encompasses *both* Smith's past disciplinary history *and* her conduct on April 23,

2003. Simply put, Smith engaged in conduct in violation of Montgomery's written policies

on far more occasions than any other employees she identified, including other supervisory

employees. Smith's rather half-hearted and conclusory identification of other employees

who slept on the job or took extended breaks is not legally sufficient to create a genuine issue

of material fact as to whether the legitimate, non-discriminatory reason is a pretext for

discrimination. Smith fails to argue that any of the other evidence before the Court

---

facie case); *Silvera v. Orange County Sch. Bd.,* 244 F.3d 1253, 1259 (11th Cir. 2001)
(reversing judgment in favor of plaintiff because employer entitled to judgment as a matter
of law where plaintiff's comparator engaged in fewer instances of misconduct than plaintiff);
*Maniccia v. Brown,* 171 F.3d 1364, 1368-69 (11th Cir. 1999) (affirming summary judgment
in employer's favor where alleged misconduct of comparators was not sufficiently similar
to support disparate treatment claim); *Holifield v. Reno,* 115 F.3d at 1563 (affirming
summary judgment where plaintiff failed to produce sufficient evidence that non-minority
employees with which he compares his treatment were similarly situated in all aspects, or that
their conduct was of comparable seriousness to the conduct for which he was discharged);
*Jones v. Gerwens,* 874 F.2d 1534, 1540-42 (11th Cir. 1989); *Nix,* 738 F.2d at 1185-87
(African-American plaintiff who was replaced by another African-American after
termination for violation of work rule failed to make out a prima facie case of race
discrimination because he did not meet his burden of showing that a white employee in
similar circumstances was retained while he was fired). In evaluating the similarity of the
comparators identified by the plaintiff, the most important variables in a discriminatory
discipline case are the nature of the offenses committed and the nature of the punishments
imposed. *See, Jones v. Gerwens,* 874 F.2d at 1539. Both the "quantity and the quality of the
comparators's misconduct must be nearly identical to prevent courts from second-guessing
employers' reasonable decisions and confusing apples and oranges." *Maniccia,* 171 F.3d at
1368. In making this analysis a court must keep in mind that "Title VII does not take away
an employer's right to interpret its rules as it chooses, and to make determinations as it sees
fit under those rules[.]" *Id.* at 1369. Moreover, the actions of the employer toward the
proffered comparators are only relevant if the decisionmaker knew of the rule violations by
the comparators and took no action against them. *Jones v. Gerwens,* 874 F.2d at 1542.

constitutes evidence of pretext.[7]

On the record before this Court, no reasonable jury could find that the proffered reasons for the termination of Smith's employment was a pretext for discrimination on either the basis of sex. Accordingly, Montgomery's Motion for Summary Judgment is due to be GRANTED on all claims arising out of the termination of Smith's employment. The Court is compelled to conclude that Smith has failed to establish a genuine issue of material fact with respect to whether Montgomery's proffered legitimate, non-discriminatory reason for her dismissal was a pretext for discrimination. For this reason, Montgomery is entitled to summary judgment on Smith's claims. In light of this finding, the Court need not and will not address the motion for summary judgment on the grounds that Smith waited to long to file a Charge of Discrimination with the EEOC.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

(1) Defendant's Motion for Summary Judgment (Doc. # 10) is GRANTED.

---

[7]    For example, Smith never argues that the sexist Sexton remarks constitute circumstantial evidence of pretext. She only argues that the remarks constitute direct evidence of discrimination. While the Court finds the Sexton remarks troubling, it cannot and will not analyze whether the remarks are sufficient evidence of pretext to warrant a jury trial because Smith has not made that argument. Indeed, there is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment; the onus is on the parties to formulate arguments. *See , e.g. Resolution Trust Corp. v . Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.), *cert. denied,* 516 U.S. 817 (1995); *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990), *reh'g denied,* 921 F.2d 283 (11th Cir. 1990); *Chase v. Kawasaki Motors Corp.*, U.S.A., 140 F. Supp. 2d 1280, 1286 (M.D. Ala. 2001).

(2)  All of Plaintiff's claims and this case are DISMISSED WITH PREJUDICE.

(3)  The trial scheduled in this matter is CANCELLED.

This Court will enter a separate final judgment taxing costs.

DONE this the 30th day of April, 2007.

_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE